Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 4780 | **DATE** | 8/22/2001 |
| **CASE TITLE** | HELEN MIHAILOVICH vs. GARY LAATSCH | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Defendants' motion for summary judgment [50-1] is denied.

(11) ☒ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | AUG 2 3 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 123 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 AUG 22 PM 7:00 | | |
| LG | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION.

| | |
|---|---|
| HELEN MIHAILOVICH, | ) |
| Plaintiff, | ) Case No. 99 C 4780 |
| v. | ) The Honorable John W. Darrah |
| GARY LAATSCH, LAW OFFICE of PAVALON, GIFFORD, LAATSCH & MARINO, | ) |
| Defendants. | ) |

**DOCKETED**
AUG 2 3 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff Helen Mihailovich ("Plaintiff" or "Mihailovich") has filed a one-count Complaint against Gary Laatsch and the Law Office of Pavalon, Gifford, Laatsch & Marino ("Defendants") for professional negligence. Defendants have moved for summary judgment pursuant to FED.R.CIV.P. 56. For the reasons that follow, Defendants' Motion for Summary Judgment [50] is DENIED.

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses..." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the Court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings,

123

affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate through specific evidence that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986); *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## **BACKGROUND**

The undisputed facts taken from the parties' Local Rule 56.1(a) & (b) statements of material facts (referred to herein as "Pl.'s 56.1" and "Def.'s 56.1") and exhibits are as follows.

Plaintiff Helen Mihailovich was injured in a single-vehicle accident in Olympia Fields, Illinois on July 1, 1986. (Def.'s 56.1 ¶ 1, Pl.'s 56.1 ¶ 1). At the time of the accident, she was a passenger in a Chevy Nomad van being driven by her husband, Mihailio Mihailovich. (Def.'s 56.1 ¶ 2).

In the Spring of 1987, Plaintiff engaged the law firm of Pavalon, Gifford, Laatsch & Marino to sue Cook County in connection with the July 1, 1986 accident. (Def.'s 56.1 ¶ 6). Defendants

were the second law firm retained by Plaintiff in connection with her contemplated action against Cook County. (Def.'s 56.1 ¶ 7). Before Plaintiff contacted Defendants, Mihailio Mihailovich died in a separate car accident and therefore could provide no account of the accident. (Def.'s 56.1 ¶ 8).

On June 30, 1987, Defendants filed a lawsuit against Cook County ("the underlying action") on Plaintiff's behalf. (Def.'s 56.1 ¶ 10). Attorney Gary Laatsch ("Laatsch") assumed primary responsibility for prosecution of Plaintiff's case. Cook County, in turn, filed a third-party claim against the Estate of Mihailio Mihailovich, asserting that negligent operation of the vehicle by the driver was the cause of the accident. (Def.'s 56.1 ¶ 11).

After filing the Complaint on Plaintiff's behalf, Defendants retained a private investigator, who located and obtained a statement from an eyewitness, John Penkala, who claimed that he observed Mihailovich speeding at the time of the accident. (Def.'s 56.1 ¶ 12, 13). In the course of discovery in the underlying case, Defendants propounded interrogatories to Cook County and received sworn responses. (Def.'s 56.1 ¶ 14). Plaintiff's discovery revealed that there had been over one-hundred collisions on the curve during the six years prior to Plaintiff's accident. (Pl.'s 56.1 ¶ 6).

During the entire time that Defendants represented Helen Mihailovich (from 1987 until 1998), they took only one deposition in the case. (Pl.'s 56.1 ¶ 8). Defendants never asked anyone to inspect the road where the collision occurred. (Pl.'s 56.1 ¶ 8). Defendants did not inquire into the weather conditions at the time of any prior collisions. (Pl.'s 56.1 ¶ 8). Defendants never learned that there was a reduction in the rate of collisions after the roadway was fixed in 1988. (Pl.'s 56.1 ¶ 8). Defendants did not inquire into the driving experience of Mr. Penkala, how far he was from the Plaintiff's van when he made his observations, or how many vehicles, if any, were between the

eyewitness and Plaintiff's van when the observations were made. (Pl.'s 56.1 ¶ 8). Defendants voluntarily dismissed the Mihailovich case against Cook County in 1992 because there was an impending trial date and they had not secured expert testimony to support the allegations. (Pl.'s 56.1 ¶ 8). Defendants refiled the case in 1993. (Pl.'s 56.1 ¶ 8, 35).

Defendant Laatsch did not contact an expert in the case until April or May of 1992 when he spoke with William Berg. (Pl.'s 56.1 ¶ 8). Berg is the only expert Laatsch consulted with on the case. (Pl.'s 56.1 ¶ 8). Laatsch never authorized Berg to visit the site, perform any follow-up analysis, or perform an engineering assessment of prevailing road conditions or traffic control devices at the site. (Pl.'s 56.1 ¶ 9). Based on his analysis at the time, Berg was unable to determine to a reasonable degree of certainty whether there were defects in the subject roadway. (Pl.'s 56.1 ¶ 9).

Defendants discussed the difficulty of proving liability in the underlying case with Walter Mihailovich (Plaintiff's son) at various times, but they never sent letters to either Walter or Helen informing them that they no longer wanted to work on Plaintiff's case. (Def. Ex. 7 at 72-73, 106-107). Walter Mihailovich wrote Defendants on February 28, 1997, directing them to transfer the file to the Law Offices of Edward Vrdolak. (Def.'s 56.1 ¶ 18). The Vrdolak firm eventually declined the representation. (Def.'s 56.1 ¶ 19).

The responsibility for seeking new counsel was given to Walter Mihailovich, Helen's son. (Def.'s 56.1 ¶ 20). Walter conducted ongoing discussions with the law firm of Giaimo & Vreeburg from December 1997 through July 1998. (Def.'s 56.1 ¶ 21). This firm prepared *pro hac vice* submissions in connection with the underlying case and represented to other attorneys that it had been retained as counsel on Plaintiff's behalf, but they never entered an appearance or took any

affirmative steps to prosecute the claim against Cook County on Plaintiff's behalf. (Def.'s 56.1 ¶ 22).

On December 16, 1997, the Circuit Court of Cook County struck the existing trial date and entered an order granting Defendants leave to file a Motion to Withdraw as Counsel. (Def.'s 56.1 ¶ 23). Cook County had earlier filed a motion to bar Plaintiff's experts because of Defendants' failure to comply with discovery deadlines. (Pl.'s 56.1 ¶ 8). On January 27, 1998, the Circuit Court of Cook County granted Defendants' Motion to Withdraw, reset the trial date to July 22, 1998, and ordered Plaintiff to retain new attorneys within 45 days, on or before March 13, 1998. (Def.'s 56.1 ¶ 25).

Walter Mihailovich then contacted the Chicago law firm of Ross & Hardies, which ultimately declined to represent Plaintiff on March 17, 1998. (Def.'s 56.1 ¶ 29). Walter Mihailovich eventually retained attorney Mark McKenna of the Chicago law firm of Chris Hurley & Associates in May, 1998. (Def.'s 56.1 ¶ 32). On June 2, 1998, McKenna filed a two-page motion requesting leave to enter an appearance and name fact and opinion witnesses. (Def.'s 56.1 ¶ 34). This motion also requested that the trial date of July 22, 1998 be moved. (Def.'s 56.1 ¶ 35). McKenna and counsel for Cook County appeared before Judge Murray on June 12, 1998. (Def.'s 56.1 ¶ 36).

Judge Murray granted Plaintiff leave to file the appearance and name fact and opinion witnesses but refused to move the trial date of July 22, 1998. (Def.'s 56.1 ¶ 39, Def. Ex. 18 at 4). After McKenna was granted leave to name fact and opinion witnesses on Plaintiff's behalf, McKenna failed to do so. (Def.'s 56.1 ¶ 41). On July 18, 1998, the Circuit Court granted Cook County's motion to bar Plaintiff from presenting evidence at trial, over the objection of McKenna, since no witnesses had been named. (Def. Ex. 14). During the hearing, McKenna stated:

> ...it would be impossible for me to get a case like this ready for trial in a month if the Court wouldn't grant the continuance of the trial date ... but having the case for one month and with parts of this case filed all over the country with different experts, it's been impossible for me to get an expert and disclose him.

(Def.'s Ex. 14).

Neither McKenna nor Tom Paris, who entered a general appearance on behalf of Plaintiff, filed a motion to reconsider the Circuit Court's July 8, 1998 ruling. (Def.'s 56.1 ¶ 58). Cook County filed a Motion for Summary Judgment in the underlying action on July 23, 1998. (Def.'s 56.1 ¶ 59). The Circuit Court of Cook County entered Summary Judgment in favor of Cook County on July 23, 1998. (Def.'s 56.1 ¶ 61).

Defendants have disclosed the opinion and report of Kenneth S. Baker, Director of the Accident Investigation Division of the Northwestern University Center for Public Safety, who has performed an analysis and several dynamic simulations of this accident. (Def.'s 56.1 ¶ 67). It is Baker's opinion that the curve on the road at issue could be negotiated safely by a motorist driving at or within the posted speed limit. (Def.'s 56.1 ¶ 68).

Plaintiff's expert William Berg has subsequently reviewed a number of documents and information in connection with the present case. (Pl.'s 56.1 ¶ 10). Based on his additional work, Berg has concluded that there was a serious wet pavement problem at the location. (Pl.'s 56.1 ¶ 10). He believes that the single dominant factor in collisions occurring on the curve was that the southbound vehicle was on wet pavement. (Pl.'s 56.1 ¶ 11). He attributes the danger inherent in the curve to inadequate friction with the driving surface. (Pl.'s 56.1 ¶ 11). He concludes that the road had not been resurfaced since 1972 and that photographs of the roadway reveal that, at the time of the accident, there was substantial cracking in the surface in the immediate vicinity of where Plaintiff's car ran off the road. (Pl.'s 56.1 ¶ 10). He further concludes that alligator cracking is an

indicator of substantial and serious pavement wear. (Pl.'s 56.1 ¶ 11).

Plaintiff has offered a memo composed by District Engineer Frank Reno before the curve was resurfaced in 1988, stating that the pavement on the curve was very smooth and could be contributing to the cause of the accidents. (Pl.'s 56.1 ¶ 18, 19). A simple resurfacing of the curve would have taken just a few months. (Pl.'s 56.1 ¶ 18).

Plaintiff has offered the statement of Robert Field, a Village of Olympia Fields Trustee, that, as the area around the curve has deteriorated over the years, the driving surface has become progressively slicker. (Pl.'s 56.1 ¶ 23).

Plaintiff has offered the statements of Mark Fazzini, the investigating police officer of the 1986 accident. (Pl.'s 56.1 ¶ 24). He has stated that it was raining at the time of the accident and that the roadway surface was slippery. (Pl.'s 56.1 ¶ 24). He has stated that almost all of the accidents at the curve have occurred during wet roadway conditions. (Pl.'s 56.1 ¶ 24).

Plaintiff has offered the statements of Fred Unger, the Police Chief in Olympia Fields at the time of the accident. (Pl.'s 56.1 ¶ 25). He has stated that the surface of the road at the curve has been worn down to a fairly smooth surface over the years and that the constant wear of cars has made it shiny. (Pl.'s 56.1 ¶ 25). He has further stated that the thirty-five mile-per-hour speed limit was not a reasonable speed limit in inclement weather for drivers who were unfamiliar with the turn. (Pl.'s 56.1 ¶ 25).

## DISCUSSION

To succeed on her claim, Plaintiff must establish the four elements of a legal malpractice claim: "(1) the existence of an attorney-client relationship that establishes a duty on the part of the attorney; (2) a negligent act or omission constituting a breach of that duty; (3) proximate cause

establishing that "but for" the attorney's negligence, the plaintiff would have prevailed in the underlying action; and (4) actual damages." *Lucey v. Law Offices of Pretzel & Stouffer*, 301 Ill.App.3d 349, 353, 703 N.E.2d 473, 476 (Ill. App. Ct. 1998).

Defendants choose to attack the third element of Plaintiff's case in their Motion for Summary Judgment. To prevail against this Motion for Summary Judgment, Plaintiff must show that "but for" the attorney's negligence, the client would have successfully defended or prosecuted the underlying suit." *Bartholomew v. Crockett*, 131 Ill.App.3d 456, 464, 475 N.E.2d 1035, 1040 (Ill. App. Ct. 1985). Defendants argue that: (1) Plaintiff cannot show causation because the attorney-client relationship ceased while Plaintiff still had a viable cause of action; (2) Plaintiff's underlying case lacks merit because she has failed to provide an expert that can substantiate that her accident was caused by the road; and (3) the Illinois Local Governmental Tort Immunity Act precludes Plaintiff's claim in her underlying case. (Def. Mot. 1.).

*Proximate Causation: Viability of Plaintiff's Claim*

An attorney's duty to a client ceases upon the attorney's discharge. If a cause of action is viable at the time an attorney is discharged, a plaintiff cannot succeed on a legal malpractice claim. *Land v. Greenwood*, 133 Ill.App.3d 537, 540, 478 N.E.2d 1203, 1205 (Ill. App. Ct. 1985). Defendants contend that they are entitled to summary judgment since Plaintiff's claim was viable when they ceased their representation.

Whether or not Plaintiff's claim was still viable is in dispute. A reasonable juror might conclude that Plaintiff's case was no longer viable when Defendants ceased their representation. Defendants' Motion to Withdraw was granted on January 27, 1998. (Def.'s 56.1 ¶ 25). At that time, Plaintiff's case was eleven years old, and Defendants had not named an expert witness in the case.

At that time, Cook County had already filed a motion to bar Plaintiff from presenting evidence because of Defendants' delay in naming witnesses.

Although Defendants might argue that Plaintiff's delay in securing counsel may have destroyed the viability of the case, a reasonable juror might conclude that Defendants' failure to prosecute the case for eleven years was the proximate cause of Plaintiff's inability to secure counsel.

Furthermore, the case relied upon by Defendants, *Land v. Greenwood,* 133 Ill.App.3d 537, 540, 478 N.E.2d 1203, 1205 (Ill. App. Ct. 1985), is distinguishable in a very significant way. In that case, the Illinois Appellate Court found that the case was still viable since Plaintiff could have taken a voluntary non-suit and re-filed at a later date. This option was not available to Mihailovich in 1998 because Defendants had already taken one voluntary non-suit in 1993.

*Proximate Causation: Merits of Plaintiff's Underlying Claim*

Defendants further allege they are entitled to summary judgment because Plaintiff's expert has not concluded that the condition of the curve caused the accident.

A plaintiff in a legal malpractice case "is essentially required to prove a case-within-a-case; specifically, establishing a *prima facie* ... case and then proving it in order to prove the legal malpractice case." *Sheppard v. Krol,* 218 Ill.App.3d 254, 256, 578 N.E.2d 212, 214 (Ill. App. Ct. 1991). "The defendant's conduct is a factual cause of the plaintiff's injury if the conduct was 'a material element and a substantial factor in bringing about the injury.' Where reasonable minds can differ on the question, a jury must decide." *Jefferson v. City of Chicago,* 269 Ill.App.3d 672, 675, 646 N.E.2d 1305, 1308 (Ill. App. Ct. 1995)(citation omitted).

Plaintiff has met her burden of showing that Cook County's failure to maintain the curve was "a material element and a substantial factor in bringing about the injury." Plaintiff's expert, Berg,

has concluded that there was a serious wet pavement problem at the location as a result of Cook County's failure to maintain the pavement at the curve. (Pl.'s 56.1 ¶ 10). He believes the single dominant factor in the accidents at the corner was the condition of the pavement when it was wet. (Pl.'s 56.1 ¶ 11). He concludes that the road had not been resurfaced at least since 1972 and that photographs of the roadway reveal that, at the time of the accident, there was substantial cracking in the surface in the immediate vicinity of where Plaintiff's car ran off the road and that this cracking is an indicator of substantial and serious pavement wear. (Pl.'s 56.1 ¶ 11). Plaintiff has further offered the statements of Mark Fazzini, the investigating police officer of the 1986 accident. (Pl.'s 56.1 ¶ 24). He has stated that it was raining at the time of the accident and that the roadway surface was slippery. (Pl.'s 56.1 ¶ 24).

Based on the evidence, whether or not Cook County's failure to maintain the curve caused the accident is an issue on which reasonable minds may disagree. It is therefore a question for the jury.

*Proximate Causation: Immunity of Cook County*

Defendants further argue that they are entitled to summary judgment since Plaintiff's underlying claim was barred by the Illinois Local Government Tort Immunity Act. This argument is not persuasive. Although local governments are immune for failure to undertake public improvements,[1] Plaintiff's case is clearly based on Cook County's alleged failure to maintain the pavement on the curve at issue. A municipality does have a "general duty to maintain its property in a reasonably safe manner..." *Herman v. Township*, 284 Ill.App. 3d 53, 58, 671 N.E.2d 1141, 1145

---

[1] *See e.g., West v. Kirkham*, 588 N.E.2d 1104, 110 (Ill. App. Ct. 1992)("no liability could be imposed for the failure to undertake the improvements in the first place.")

-10-

(Ill. App. Ct. 1996).

In reaching his conclusions, Plaintiff's expert Berg considered the dilapidated condition of the road previous to resurfacing. Furthermore, Plaintiff has offered the testimony of Robert Field that the dangerously slick condition of the curve was the result of deterioration over time. Defendants' Motion for Summary Judgment is therefore denied.

## CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment [50] is DENIED.

**IT IS SO ORDERED.**

John W. Darrah, Judge
United States District Court

Date: August 22, 2001